UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LOUISE ARMIJO,<br><br>                    Plaintiff,<br><br>    v.<br><br>YAKIMA HMA, LLC,<br><br>                    Defendant. | NO:  11-CV-03114-TOR<br><br>ORDER RE: MOTION TO DISMISS<br>AND MOTION TO AMEND |

BEFORE THE COURT is Defendant Yakima HMA, LLC's Motion to

Dismiss certain claims (ECF No. 7).  Also before the Court is Plaintiff's

Alternative Motion for Leave to Amend her complaint (ECF No. 16).  The Court

heard oral argument by telephonic hearing on March 22, 2012.  Victor Ro appeared

on behalf of the Plaintiff, Louise Armijo.  Paula L. Lehmann and Maria Abramova

appeared on behalf of Defendant Yakima HMA, LLC.  The Court has reviewed the

motions, the responses, the record and files herein and is fully informed.

The Parties are reminded to follow the Local Rules for the Eastern District

of Washington, including, but not limited to Rule 10.1(a)(2) requiring double

ORDER ~ 1

1  spaced footnotes and all typed matter in at least 14 point typeface or monospaced

2  typeface of no more than 10.5 characters per inch.  In the future, offending

3  pleadings will be stricken.

4      At the outset of the hearing, the Court questioned Plaintiff whether it would

5  be appropriate to dismiss all the individual defendants who had not been served

6  within 120 days as required by Fed.R.Civ.P. 4(m).  Counsel for Plaintiff indicated

7  no objection to the dismissal of individual defendants who had not been served.

8  Accordingly, those individuals will be dismissed and the caption of this case

9  amended to reflect this Order.

10                              BACKGROUND

11      On June 28, 2010, Ms. Armijo was discharged from her job as a financial

12  counselor for Yakima HMA, LLC, doing business as Toppenish Community

13  Hospital.  This suit, seeking damages and other relief, was filed November 17,

14  2011.  Plaintiff filed a First Amended Complaint on January 5, 2012, a 75-page

15  document seeking relief for her termination and for the alleged acts leading up to

16  and culminating in her termination, under various legal theories.

17      Defendant moved to dismiss the following 10 claims out of the 15 claims in

18  the Complaint:

19      (i)     wrongful discharge in violation of public policy;

20      (ii)    failure to accommodate;

ORDER ~ 2

1    (iii)    intentional infliction of emotional distress (outrage);

2    (iv)    negligent infliction of emotional distress;

3    (v)    negligent hiring, training, managing and supervision;

4    (vi)    negligent retention;

5    (vii)    defamation, libel and slander;

6    (viii)  invasion of privacy by false light;

7    (ix)    failure to pay overtime; and

8    (x)    breach of contract.

9                              DISCUSSION

10    To withstand a motion to dismiss pursuant to Rule 12(b)(6), a complaint

11    must set forth factual allegations sufficient "to raise a right to relief above the

12    speculative level." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct.

13    1955, 167 L.Ed.2d 929 (2007). The tenet that a court must accept as true all of the

14    allegations contained in a complaint is inapplicable to legal conclusions.

15    Threadbare recitals of the elements of a cause of action, supported by mere

16    conclusory statements, do not suffice. *Id*. ("Although for the purposes of a motion

17    to dismiss we must take all of the factual allegations in the complaint as true, we

18    are not bound to accept as true a legal conclusion couched as a factual allegation"

19    (internal quotation marks omitted)). A pleading that offers "labels and

20    conclusions" or "a formulaic recitation of the elements of a cause of action will not

ORDER ~ 3

do." *Id*. Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." The pleading standard set by Rule 8 of the Federal Rules of Civil Procedure "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, ---, 129 S.Ct. 1937, 1949 (2009). Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. *Id*. at 1950. In assessing whether Rule 8(a)(2) is satisfied, the Court first identifies the elements of the asserted claim based on statute or case law. *Id*. at 1949. The Ninth Circuit follows the methodological approach set forth in *Iqbal* for the assessment of a plaintiff's complaint:

> "[A] court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."

*Moss v. U.S. Secret Service*, 572 F.3d 962, 970 (9th Cir. 2009) (*quoting Iqbal*, 129 S.Ct. at 1950).[1]

---

[1] Rule 12(f) of the Federal Rules of Civil Procedure allows the court to strike from "any pleading any insufficient defense or any redundant, immaterial, impertinent,

ORDER ~ 4

The Ninth Circuit has repeatedly held that "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000). The standard for granting leave to amend is generous. The court considers five factors in assessing the propriety of leave to amend—bad faith, undue delay, prejudice to the opposing party, futility of amendment, and whether the plaintiff has previously amended the complaint. *United States v. Corinthian Colleges*, 655 F.3d 984, 995 (9th Cir. 2011).

or scandalous matter." The purpose of a Rule 12(f) motion is to avoid the costs that arise from litigating spurious issues by dispensing with those issues prior to trial. *Sidney–Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983). Immaterial matter is defined as matter that "has no essential or important relationship to the claim for relief or the defenses being pleaded."

ORDER ~ 5

**1.  Wrongful Discharge in Violation of Public Policy.**

To state a claim for wrongful termination in violation of public policy, a plaintiff must satisfy a four factor test.  The plaintiff must show:

(1) the existence of a clear public policy (the clarity element);

(2) that discouraging the conduct in which he or she engaged would jeopardize the public policy (the jeopardy element);

(3) that the public-policy-linked conduct caused the dismissal (the causation element); and

(4) that the defendant has not offered an overriding justification for the dismissal (the absence of justification element).

*Cudney v. ALSCO, Inc.*, 172 Wash.2d 524, 529, 259 P.3d 244 (2011)(italics and brackets omitted). These elements are conjunctive, meaning that all four elements must be proved. *Id.*  This public-policy based wrongful-termination claim is a narrow exception to Washington's general rule of employment at will. *Thompson v. St. Regis Paper Co.*, 102 Wash.2d 219, 232, 685 P.2d 1081 (1984).  The plaintiff "must plead and prove that a stated public policy, either legislatively or judicially recognized, may have been contravened." *Thompson*, 102 Wash.2d 219 at 232–33, 685 P.2d 1081, 1089. Washington courts have generally recognized the public policy exception when an employer terminates an employee as a result of his or her (1) refusal to commit an illegal act, (2) performance of a public duty or obligation,

(3) exercise of a legal right or privilege, or (4) in retaliation for reporting employer misconduct.  *Danny v. Laidlaw Transit Services, Inc.,* 165 Wash.2d 200, 208, 193 P.3d 128, 132 (2008).

Plaintiff's wrongful discharge allegations are contained in paragraphs 187 through 193 of her first Amended Complaint (ECF No. 5).  Plaintiff only identifies Washington's Law Against Discrimination, RCW 49.60.180 (WLAD) and Washington's Law Against Retaliatory Discharge, RCW 51.48.025 (WLARD), as the public policies being violated.  Plaintiff's reasoning is circular.  These two statutes provide for a cause of action themselves.  They do not support a third cause of action for wrongful discharge as there is no additional "jeopardy" not already protected by the statutes themselves. Plaintiff has not shown that WLAD and WLARD are "inadequate to protect public policy."  *See Cudney v. ALSCO, Inc.,* 172 Wash.2d at 530-31, 259 P.3d at 247.

The Court finds this cause of action insufficient. Plaintiff has already amended her complaint once and the Court finds that further amendment as to this cause of action would be futile.

**2.  Failure to Accommodate**.

Under RCW 49.60.180, a disabled employee has a cause of action for at least two different types of discrimination. The employee may allege failure to accommodate where the employer failed to take steps "reasonably necessary to

accommodate the employee's condition." *Jane Doe v. Boeing Co.*, 121 Wash.2d 8, 17, 846 P.2d 531 (1993).  The employee also may file a disparate treatment claim if the employer discriminated against the employee because of the employee's condition.  *Riehl v. Foodmaker, Inc.*, 152 Wash.2d 138, 145, 94 P.3d 930, 934 (2004). The Washington Supreme Court has laid out four elements that an employee must show to prove discrimination based on lack of accommodation:

> (1) the employee had a sensory, mental, or physical abnormality that substantially limited his or her ability to perform the job; (2) the employee was qualified to perform the essential functions of the job in question; (3) the employee gave the employer notice of the abnormality and its accompanying substantial limitations; and (4) upon notice, the employer failed to affirmatively adopt measures that were available to the employer and medically necessary to accommodate the abnormality.

*Riehl v. Foodmaker, Inc., supra.*

Plaintiff's failure to accommodate allegations are contained in paragraphs 202 through 206 of her First Amended Complaint.  Plaintiff's allegations are the type of wholly inadequate statements condemned in *Twombly* and *Iqbal*.  Plaintiff responded that she provided a list of facts supporting this claim (incorporating the prior 202 paragraphs of the Complaint by reference), specifically she points to the First Amended Complaint paragraphs 35, 36, 38, 39, 42 and 184 et seq.  Other than conclusory statements, however, none of the four elements of this cause of action have been properly pleaded with short, plain statements of fact.  For instance, paragraph 42 alleges, "In May 2010, when Ms. Armijo returned to work, she

requested her supervisor Stacie George for a reasonable accommodation. Stacie

George denied such a request." That is less than informative and does not meet the

elements of a properly pleaded cause of action.

      The Court finds this cause of action insufficient. Plaintiff has already

amended her complaint once and the Court finds that further amendment as to this

cause of action would be futile.  This is especially true in this case since the

underlying WLAD and ADA claims remain pending, each with an allegation of

failure to accommodate, as well. *See* First Amended Complaint, ¶ 184.

### 3. Intentional Infliction of Emotional Distress (Tort of Outrage).

      The basic elements of the tort of outrage are: "(1) extreme and outrageous

conduct; (2) intentional or reckless infliction of emotional distress; and (3) actual

result to the plaintiff of severe emotional distress." *Rice v. Janovich*, 109 Wash.2d

48, 61, 742 P.2d 1230 (1987); Restatement (Second) of Torts § 46 (1965). The

conduct in question must be "so outrageous in character, and so extreme in degree,

as to go beyond all possible bounds of decency, and to be regarded as atrocious,

and utterly intolerable in a civilized community." *Dicomes v. State*, 113 Wash.2d

612, 630-631, 782 P.2d 1002, 1012 - 1013 (1989)(*citing Grimsby v. Samson*, 85

Wash.2d 52, 59, 530 P.2d 291 (1975)). The question of whether certain conduct is

sufficiently outrageous is ordinarily for the jury, but it is initially for the court to

determine if reasonable minds could differ on whether the conduct was sufficiently extreme to result in liability. *Id.*

In this case, Ms. Armijo alleges a tort of outrage from paragraph 216 to 226 of her First Amended Complaint.  Ms. Armijo specifies two actions to support her claim; first, her discharge from employment with discriminatory or retaliatory motive, and second, leaving her diary writings open on top of her personal belongings when they were returned to her. ¶ 218 and ¶ 220.

The Washington Supreme Court's decision in *Dicomes* is highly informative to this case.  In *Dicomes*, the Plaintiff argued that her discharge constituted outrageous conduct because it allegedly showed her to be an incompetent and disloyal employee. She argued that the management study was "an intentionally prepared false report created for the sole purpose of embarrassing, humiliating and then terminating Ms. Dicomes . . ."   She asserted that if this allegation was true, it would constitute outrageous conduct. The Supreme Court disagreed:

> First, even if the purpose of the study was to fire plaintiff, the fact of the discharge itself is not sufficient to support a claim of outrage. *Evrard v. Jacobson*, 117 Wis.2d 69, 342 N.W.2d 788 (Ct.App.1983).
>
> *   *   *
>
> Second, mere insults and indignities, such as causing embarrassment or humiliation, will not support imposition of liability on a claim of outrage. *Restatement (Second) of Torts* § 46, comment d (1965); *Grimsby*, 85 Wash.2d at 59, 530 P.2d 291.

*Dicomes v. State*, 113 Wash.2d at 631, 782 P.2d at 1013.

ORDER ~ 10

1    Thus, under the high bar set by the Washington Supreme Court, Plaintiff has

2    not made sufficient allegations supporting a tort of outrage for her termination.  If

3    falsifying evidence to support a termination is not enough in *Dicomes*, then

4    termination with a discriminatory or retaliatory motive cannot be enough to

5    support this tort.  Assuming Plaintiff's allegations are true concerning the manner

6    in which her diary writings were delivered, she has not shown that to be atrocious

7    conduct.  The return of personal property stored on an employer's premises

8    certainly could cause embarrassment and humiliation, but the fact remains that

9    someone had to collect Plaintiff's property, identify it as belonging to her not the

10   employer and return it.  Assuming all Plaintiff's factual allegations as true, the

11   Court cannot find that the facts support a tort of outrage for conduct "utterly

12   intolerable in a civilized community."

13       The Court finds this cause of action insufficient. Plaintiff has already

14   amended her complaint once and the Court finds that further amendment as to this

15   cause of action would be futile.

16   **4.  Negligent Infliction of Emotional Distress.**

17       In *Hunsley v. Giard*, 87 Wash.2d 424, 553 P.2d 1096 (1976), the

18   Washington Supreme Court first applied the requirement of objective

19   symptomatology to the tort of negligent infliction of emotional distress.  This was

20   a year after the Washington Supreme Court first recognized the corollary

ORDER ~ 11

intentional tort of outrage in *Grimsby v. Samson*, 85 Wash.2d 52, 530 P.2d 291

(1975).  The question posed in *Hunsley* was whether a plaintiff who suffered

emotional distress when a negligently driven car crashed into her house could

collect for negligent infliction of emotional distress when she suffered no physical

impact and stood outside the zone of immediate danger. *See Hunsley*, 87 Wash.2d

at 425, 553 P.2d 1096.  *Hunsley* held that the plaintiff could recover if she proved

negligence, i.e., duty, breach, proximate cause, and damage, and proved the

additional requirement of objective symptomatology. *See Kloepfel v. Bokor*, 149

Wash.2d 192, 199, 66 P.3d 630, 634 (2003).  In *Kloepfel*, the Supreme Court

compared the two causes of action as follows:

> The distinction in treatment between negligence and intentional torts is
> related to the difference in fault.
>
> \*   \*   \*
>
> Washington is no exception to this rule. In *Smith v. Rodene*, 69 Wash.2d
> 482, 418 P.2d 741, 423 P.2d 934 (1966), this court stated:
>
>> "We think that a fair summary of the holdings in such cases is as
>> follows: (1) Where plaintiff suffers mental or emotional distress
>> which is caused by some negligent act of the defendant, there is no
>> right of action, even although the mental condition in turn causes
>> some physical injury; unless the act causing the mental fright or
>> emotional distress also threatens an immediate physical invasion of
>> plaintiff's personal security, that is, threatens immediate bodily harm.
>> (2) But where mental suffering or emotional distress is caused by a
>> wilful act, recovery is permitted."

*Kloepfel v. Bokor*, 149 Wash.2d at 200, 66 P.3d at 634 - 635.

In the employment context, the Washington Supreme Court has likewise been instructive:

> As Division Three of the Court of Appeals observed in *Bishop v. State*, 77 Wash.App. 228, 233 n. 5, 889 P.2d 959 (1995), "Since *Hunsley*, courts have recognized the limitations of direct actions for negligent infliction of emotional distress." (*citing Calhoun v. Liberty N.W. Ins. Corp.*, 789 F.Supp. 1540, 1548 (W.D.Wash. 1992) (routine discharge for poor work performance does not give rise to cause of action for negligent infliction of emotional distress); *Lords [v. N. Auto. Corp.*], 75 Wash.App. [589,] at 595, 881 P.2d 256 [(1994)] (absent "a clear mandate of public policy," an employee has no cause of action against employer for negligent infliction of emotional distress when employment at will is terminated)). We believe *Bishop* correctly articulates the law in this state: "[A]bsent a statutory or public policy mandate, employers do not owe employees a duty to use reasonable care to avoid the inadvertent infliction of emotional distress when responding to workplace disputes." *Bishop*, 77 Wash.App. at 234–35, 889 P.2d 959. *See also Johnson v. Dep't of Soc. & Health Servs.*, 80 Wash.App. 212, 907 P.2d 1223 (1996) (holding employers have no duty to avoid infliction of emotional distress on employees when responding to employment disputes).

*Snyder v. Medical Service Corp. of Eastern Washington*, 145 Wash.2d 233, 243-244, 35 P.3d 1158, 1164 (2001).

In this case, Ms. Armijo alleges negligent infliction of emotional distress from paragraph 211 to 215 of her First Amended Complaint.  Ms. Armijo specifies two actions to support her claim; first, the tardy return of her wide open diary writings, and second, the false accusation that she improperly accessed personal family records. ¶ 213 and ¶ 214.  Neither allegation involves an immediate physical invasion of plaintiff's personal security and both arise out of the employment and termination process which do not support a cause of action.

1    The Court finds this cause of action insufficient. Plaintiff has already

2    amended her complaint once and the Court finds that further amendment as to this

3    cause of action would be futile.

4    **5. Negligent Hiring, Training, Managing, and Supervision, and**
     **6. Negligent Retention.**

5

6    In Washington, a cause of action for negligent supervision requires a

7    plaintiff to show that an employee acted outside the scope of his or her

8    employment. *Niece v. Elmview Group Home*, 131 Wash.2d 39, 48, 929 P.2d 420

9    (1997) ("Even where an employee is acting outside the scope of employment, the

10   relationship between employer and employee gives rise to a limited duty, owed by

11   an employer to foreseeable victims, to prevent the tasks, premises, or

12   instrumentalities entrusted to an employee from endangering others. This duty

13   gives rise to causes of action for negligent hiring, retention, and supervision.");

14   *Rodriguez v. Perez*, 99 Wash.App. 439, 451, 994 P.2d 874 (2000) ("If an employee

15   conducts negligent acts outside the scope of employment, the employer may be

16   liable for negligent supervision."); *Gilliam v. Dep't of Soc. & Health Servs.*, 89

17   Wash.App. 569, 584–585, 950 P.2d 20 (1998) ("When an employee causes injury

18   by acts beyond the scope of employment, an employer may be liable for

19   negligently supervising the employee."); *Briggs v. Nova Servs.*, 135 Wash.App.

20   955, 966–67, 147 P.3d 616 (2006), *aff'd*, 166 Wash.2d 794, 213 P.3d 910 (2009)

     ("A negligent supervision claim requires showing: (1) an employee acted outside

ORDER ~ 14

the scope of his or her employment; (2) the employee presented a risk of harm to other employees; (3) the employer knew, or should have known in the exercise of reasonable care, that the employee posed a risk to others; and (4) that the employer's failure to supervise was the proximate cause of injuries to other employees.").

In this case, Ms. Armijo alleges negligent hiring, training, managing and supervision in paragraphs 227 to 232 of her First Amended Complaint. Ms. Armijo specifies the tortious conduct as including defendant's employees' reputation for "engaging in age and disability discrimination and other unlawful conduct." ECF No. 5, ¶ 229. Additionally, Ms. Armijo alleges negligent retention from paragraphs 233 to 238. Ms. Armijo specifies the tortious conduct as "failing to provide plaintiff with a safe working environment," ¶ 235, and "Stacie George's inappropriate conduct, and that she and possibly other employees were unfit for their positions," ¶ 236.

Plaintiff's Complaint is insufficient for two insurmountable reasons. First, there are no allegations that the employees' tortious conduct was performed "outside the scope of employment." Second, Plaintiff concedes that she has no facts to support her allegations, but "intends to discover the employer's prior knowledge." ECF No. 14 at 16. She speculates to a possibility that employees possessed traits for unlawful discrimination and expresses her stated "intention to

1  discover this possible fact." ECF No. 14 at 17.  These are not facts, let alone

2  conclusions; they are pure speculation.  Even if they were pleaded as conclusions,

3  conclusions do "not unlock the doors of discovery."  *Ashcroft v. Iqbal*, 556 U.S.

4  662, ---, 129 S.Ct. 1937, 1950 (2009).

5      The Court finds these causes of action insufficient.  Plaintiff has already

6  amended her complaint once and the Court finds that further amendment as to

7  these causes of action would be futile.

8  **7.  Defamation, Libel and Slander.**

9      The elements a plaintiff must establish in a defamation case are falsity, an

10  unprivileged communication, fault, and damages.  *Mohr v. Grant*, 153 Wash.2d

11  812, 822, 108 P.3d 768, 773 (2005).  Publication of a defamatory statement to

12  someone other than the person defamed is essential to liability.  *Doe v. Gonzaga

13  Univ.*, 143 Wn.2d 687, 701, 24 P.3d 390 (2001), *rev'd on other grounds*, 536 U.S.

14  273, 122 S.Ct. 2268, 153 L.Ed.2d 309 (2002). Washington courts have held that

15  intracorporate communications are not "published" for defamation purposes

16  because the corporation is essentially communicating with itself.  *See Gonzaga*,

17  143 Wn.2d at 701.  Intracorporate communications are not, however, absolutely

18  privileged; the privilege may be lost if the employee publishes a defamatory

19  statement to a co-employee not in the ordinary course of his or her work or if the

20  employee made the statement with actual malice.  *Gonzaga*, 143 Wn.2d at 702-03.

ORDER ~ 16

1    "Actual malice exists when a statement is made 'with knowledge of its falsity or

2    with reckless disregard of its truth or falsity.'"  *Gonzaga*, 143 Wn.2d at 703.

3          In this case, Ms. Armijo alleges defamation, libel and slander in paragraphs

4    239 to 257 of her First Amended Complaint.  Ms. Armijo alleges, inter alia, that

5    defendants "ma[de]  false statements about the reasons for the termination," ¶ 241,

6    "falsely accused plaintiff of lying and falsifying documents," ¶ 242, "[d]efendant

7    published to third persons, both orally and in writing, statements it portrayed to be

8    factual that plaintiff accessed personal records," ¶ 245, "[s]aid published

9    statements by defendant were untrue," ¶ 246, "defendants' accusation was

10   communicated by defendants to other management and/or employees . . . and to

11   third parties," ¶ 251, resulting in damages.

12         Based on *Gonzaga*, the allegations contained in paragraph 242 cannot stand.

13   Accusations communicated to the Plaintiff, even if false, do not constitute an

14   actionable publication.  Plaintiff's allegation that defendants communicated the

15   "accusation" to other management and/or employees implicates the unpublished or

16   privileged corporate communication exception to publication.  Two exceptions

17   exist however, if the communication was not in the ordinary course or was made

18   with actual malice.  Here, Plaintiff has pleaded actual malice and Fed. R. Civ. P.,

19   Rule 9(b) allows malice to be alleged generally.  What is missing from Plaintiff's

20   First Amended Complaint is any specificity concerning the unprivileged

communication, whether it was oral or in writing, the specific words communicated, who communicated the information to whom, and under what circumstances. Also, Rule 9(f) considers time and place to be material when testing the sufficiency of a pleading.

The Court finds these causes of action insufficient, but that another amendment might not be futile to stating a cause of action. Accordingly, the Court will allow **14 days** from the entry of this order to file an amendment to the complaint as to this cause of action correcting these deficiencies.

### 8. Invasion of Privacy.

The protectable interest in privacy is generally held to involve four distinct types of invasion: intrusion, disclosure, false light and appropriation. An action based on invasion of privacy is separate and distinct from a defamation action. *Eastwood v. Cascade Broadcasting Co.*, 106 Wash.2d 466, 469, 722 P.2d 1295, 1296 (1986). A false light claim arises when someone publicizes a matter that places another in a false light if (a) the false light would be highly offensive to a reasonable person and (b) the actor knew of or recklessly disregarded the falsity of the publication and the false light in which the other would be placed. *Id*. at 470-71. The theoretical difference between the two torts is that a defamation action is primarily concerned with compensating the injured party for damage to reputation, while an invasion of privacy action is primarily concerned with compensating for

injured feelings or mental suffering.  The two torts overlap, however, when the statement complained of is both false and defamatory. In such a case the plaintiff can proceed upon either theory, or both, although he can have but one recovery for a single instance of publicity.  *Id.* at 471.

Ms. Armijo's false light claim is contained in paragraphs 258 to 273 of her First Amended Complaint.  The Court finds that this cause of action suffers all the same insufficiencies as the defamation cause of action and more.  What is missing from Plaintiff's First Amended Complaint is any specificity concerning the publication of false information, whether it was oral or in writing, the specific words communicated, who communicated the information to whom, under what circumstances, when and where.

Ms. Armijo's First Amended Complaint alleges that private information in her diary was disseminated, ¶ 265, which, "whether true or untrue" was highly offensive, ¶ 266.  However, Plaintiff now acknowledges the three elements of false light invasion of privacy includes the element that the publication be false.  ECF No. 14 at 18.  Accordingly, even if the contents of the diary were disseminated, Plaintiff has not properly pleaded a false light claim.  Additionally, Plaintiff alleges the search for her private property, ¶ 269, supports her false light claim.  False light invasion of privacy concerns publications, not searches.  Neither paragraphs 265, 266, nor 269 supports a false light claim.

The Court finds the false light invasion of privacy cause of action insufficient, but that another amendment might not be futile to stating a cause of action.  Accordingly, the Court will allow **14 days** from the entry of this order to file an amendment to the complaint as to this cause of action correcting these deficiencies.

### 9.  Failure to Pay Overtime.

Plaintiff's overtime claim is set forth in paragraphs 274 to 279 of her First Amended Complaint.  She cites, inter alia, RCW 49.52.070, which provides:

> Any employer and any officer, vice principal or agent of any employer who shall violate any of the provisions of RCW 49.52.050 (1) and (2) shall be liable in a civil action by the aggrieved employee or his or her assignee to judgment for twice the amount of the wages unlawfully rebated or withheld by way of exemplary damages, together with costs of suit and a reasonable sum for attorney's fees: PROVIDED, HOWEVER, That the benefits of this section shall not be available to any employee who has knowingly submitted to such violations.

RCW 49.52.070.  The Washington Supreme Court expressed the strong legislative intent to assure payment to employees of wages they have earned:

> [T]he fundamental purpose of the legislation, as expressed in both the title and body of the act, is to protect the wages of an employee against any diminution or deduction therefrom by rebating, underpayment, or false showing of overpayment of any part of such wages. The act is thus primarily a protective measure, rather than a strictly corrupt practices statute. In other words, the aim or purpose of the act is to see that the employee shall realize the full amount of the wages which by statute, ordinance, or contract he is entitled to receive from his employer, and which the employer is obligated to pay, and, further, to see that the employee is not deprived of such right, nor

the employer permitted to evade his obligation, by a withholding of a part of the wages . . .

The statute must be liberally construed to advance the Legislature's intent to protect employee wages and assure payment.

*Schilling v. Radio Holdings, Inc.*, 136 Wash.2d 152, 159, 961 P.2d 371, 375 (1998) (*citing State v. Carter*, 18 Wash.2d 590, 621, 140 P.2d 298, 142 P.2d 403 (1943)).

Plaintiff's First Amended Complaint neglects to allege any quantification of the hours involved nor does it make any allegation of the specific days she was denied overtime. Time is material when testing the sufficiency of the pleadings. Fed. R. Civ. P. 9(f).

The Court finds the failure to pay overtime cause of action insufficient, but that another amendment might not be futile to stating a cause of action. Accordingly, the Court will allow **14 days** from the entry of this order to file an amendment to the complaint as to this cause of action correcting both these deficiencies.

### 10. Breach of Contract.

Plaintiff's breach of contract claim is alleged in paragraphs 280 to 284 of the First Amended Complaint. Simply put, Plaintiff contends the conduct outlined in the complaint and more specifically, her termination "breached the firm's (sic) posted nondiscrimination policy." ¶ 282. She surmises, "[t]hus, defendant has breached a contract implied in fact." ¶ 283.

1    Under Washington law, employment is generally terminable at will.

2    *Thompson v. St. Regis Paper Co.*, 102 Wn.2d 209, 685 P.2d 1081 (1984).  In

3    *Thompson*, the Washington Supreme Court recognized a cause of action for breach

4    of promise of specific treatment in specific situations:

5       [I]f an employer, for whatever reason, creates an atmosphere of job security
        and fair treatment with promises of specific treatment in specific situations
6       and an employee is induced thereby to remain on the job and not actively
        seek other employment, those promises are enforceable components of the
7       employment relationship.

8    *Thompson*, 102 Wash.2d at 230, 685 P.2d 1081. The employee must prove these

9    elements of the cause of action: (1) that a statement (or statements) in an employee

10   manual or handbook or similar document amounts to a promise of specific

11   treatment in specific situations, (2) that the employee justifiably relied on the

12   promise, and (3) that the promise was breached.  *Korslund v. DynCorp Tri-Cities*

13   *Services, Inc.*, 156 Wash.2d 168, 184-185, 125 P.3d 119, 128 (2005).  The

14   *Thompson* specific treatment claim is not an implied or express contract claim, but

15   is independent of a contractual analysis and instead rests on a justifiable reliance

16   theory. *Id*. at 185.

17       In this case, Plaintiff's cause of action relies solely on a theory of implied

18   contract.  ECF No. 14 at 19.  Necessarily, Plaintiff is claiming that her at-will

19   employment has been modified by a contract.  A contract exists where there is an

20   offer, acceptance, and consideration.  *Swanson v. Liquid Air Corp.*, 118 Wash.2d

512, 523, 826 P.2d 664, 670 (1992).  Oral assurances of continued employment

and an employee's foregoing of other employment opportunities do not create an

implied employment contract.  *Lawson v. Boeing Co.*, 58 Wash.App. 261, 265, 792

P.2d 545, 548 (1990).  Plaintiff cites *Rowe v. Vaagen Bros. Lumber, Inc.*, 100

Wash.App. 268, 996 P.2d 1103 (2000), in support of her implied contract cause of

action.  *Rowe* discusses two critical aspects of an implied contract, the terms of the

contract and the consideration:

> But employment will be terminable only for just cause if promises in an
> employee handbook create an actual or implied contract.
> A true contract is created if, in exchange for the handbook promises, the
> worker provides consideration in addition to required services.

*Rowe v. Vaagen Bros. Lumber, Inc.*, 100 Wash.App. 268, 274-275, 996 P.2d 1103,

1108 (2000) (citations omitted).  *Rowe* further explains:

> An implied contract exists if the employee acts in justifiable reliance on
> handbook promises. But general statements in a handbook do not create an
> implied contract.  To determine whether an implied contract was created, we
> look at the alleged understanding, the intent of the parties, business custom
> and usage, the nature of the employment, the situation of the parties, and the
> circumstances of the case.

*Rowe*, 100 Wash.App. at 275, 996 P.2d at 1108 (citations omitted).

Plaintiff's First Amended Complaint does not specify the offer, (the terms of

the offer), the acceptance (the terms accepted) or the consideration of an implied

contract.  The Court finds this cause of action insufficient.  It is not certain that an

amendment would be futile.  Accordingly, the Court will allow **14 days** from the

1    entry of this order to file an amendment to the complaint as to this cause of action

2    correcting all these deficiencies.

3                            **SERVICE OF PROCESS**

4           The Court's file shows that HOSPITAL MANAGEMENT SERVICES OF

5    FLORIDA, INC., a Washington Corporation, doing business as Toppenish

6    Community Hospital appears to have been served November 22, 2011, and

7    HEALTH MANAGEMENT ASSOCIATES, INC., a Florida Corporation, appears

8    to have been served November 30, 2011. *See* ECF No. 3.   Accordingly, neither of

9    these two defendants will be dismissed.  The remaining named defendants have not

10   been served and each will be dismissed.

11   **ACCORDINGLY, IT IS HEREBY ORDERED:**

12      1.  The following defendants have not been served and each are hereby

13   **DISMISSED**:

14      TIMOTHY R. PARRY, an individual person, and her (sic) marital community

15      with JANE DOE PARRY; MONTE BOSTWICK, an individual person and her

16      (sic) marital community with JANE DOE BOSTWICK; VICKI SWANK, an

17      individual person and her marital community with JOHN DOE SWANK;

18      RANDY A. JONES, and individual person, and her (sic) marital community

19      with JANE DOE JONES; YAKIMA HMA PHYSICIAN MANAGEMENT

20      CORP., a Washington Corporation, doing business as Toppenish Community

ORDER ~ 24

Hospital, and doing business as Yakima Regional Management Center and

Cardiology, and doing business as Health Management Associates, Inc.;

TIMOTHY R. PARRY, an individual person and her (sic) marital community

with JANE DOE PARRY; RANDALL MOGLIA, and individual person and

her (sic) marital community with JANE DOE MOGLIA; GARY S. BRYANT,

and individual and her (sic) marital community with JANE DOE BRYANT;

JAMES A. BARBER, and individual person and her (sic) marital community

with JANE DOE BARBER; KATHLEEN K. HOLLOWAY, and individual

person and her marital community with JOHN DOE HOLLOWAY; JOHN R.

FINNEGAN, and individual person and her (sic) marital community with JANE

DOE FINNEGAN; HOSPITAL MANAGEMENT ASSOCIATES, INC., A

Washington Corporation, doing business as Health Management Associates Inc;

John Does 1-50, Defendants.

2.  The District Court Executive is directed to dismiss these Defendants and

change the caption of the case accordingly.

3.  Defendant's Motion to Dismiss (ECF No. 7) is **GRANTED** in part and

**DENIED** in part.  The following causes of action are dismissed with prejudice:

      1.     wrongful discharge in violation of public policy;

      2.     failure to accommodate;

      3.     intentional infliction of emotional distress (outrage);

1              4.      negligent infliction of emotional distress;

2              5.      negligent hiring, training, managing and supervision; and

3              6.      negligent retention.

4       4.  Plaintiff's Motion for Leave to Amend (ECF No. 16) is **GRANTED** in

5   part and **DENIED** in part. The following causes of action are dismissed with leave

6   to amend:

7              7.      defamation, libel and slander;

8              8.      invasion of privacy by false light;

9              9.      failure to pay overtime; and

10             10.     breach of contract.

11      If Plaintiff chooses to amend her complaint as to these four causes of action, she

12  shall do so within **14 days** of the entry of this order by way of short, plain

13  statements in a pleading entitled "Supplement to the First Amended Complaint."

14  See Rule 15(d). This supplement, if filed, will take the place of those now excised

15  portions of the First Amended Complaint.

16      The District Court Executive is hereby directed to enter this Order and furnish

17  copies to counsel.

18      **DATED** this 11th day of April, 2012.

19                          *s/ Thomas O. Rice*

20                          THOMAS O. RICE
                            United States District Judge

ORDER ~ 26